OPINION OF THE COURT
Kenneth W. Rudolph, J.
This is an action for breach of contract arising from a proposed venture between two Internet companies. In its complaint the plaintiff alleges that on or about April 13, 2000, the parties entered into an agreement regarding the marketing and promotion of an Internet service that was developed by the defendant. Pursuant to the terms of their contract the parties agreed that during the term of the agreement (from April 13, 2000 until one year after the launch date [of May 8, 2000]), they would promote the service in order to maximize the number of service users. The defendant was obligated to promote the service by, among other things, disseminating compact discs (CD’s) to Ace Hardware retail stores. In turn, the plaintiff was to make two cash payments to the defendant. It was to pay $2,000,000 to the defendant within 30 days of the agreement’s effective date (May 13, 2000). If, however, the number of users registered by the defendant did not exceed one million by 180 days after the first anniversary of the launch date (Nov. 4, 2001), the defendant was obligated to refund to the plaintiff a portion of the $2,000,000 equal to the percentage by which the number of users was less than one million. The other payment that the plaintiff was obligated to make related to the defendant’s efforts to distribute the CD’s. In consider *3 ation of the defendant’s commercially reasonable efforts in distributing five million CD’s, the plaintiff was to pay to it a nonrefundable $3,200,000. The agreement further provided that if the service was terminated by Spinway (an Internet service provider retained by the defendant) the parties would mutually determine the best course of action to pursue.
The complaint further asserts that about six months after the agreement’s launch date, Spinway experienced financial difficulties and stopped providing the service. At that time, the defendant had procured far less than the one million users anticipated in the agreement and had made efforts to distribute far fewer than the five million CD’s it was obligated to attempt to distribute. Insofar as no replacements for Spinway could be found, the parties mutually determined, among other things, to terminate their respective obligations to advertise and promote the service and to refund to the plaintiff a portion of the money that it had paid to the defendant but for which it had not received compensation. The parties further agreed that the plaintiff would promote the defendant to its users. A service termination agreement (STA) was negotiated and ready for execution by April 19, 2001. On April 23, 2001, the defendant informed the plaintiff that its board of directors would not approve the STA. The defendant indicated that it had no intention at that time, if ever, of returning any of the money it received from the plaintiff. The defendant also refused to compensate the plaintiff for the mass distribution of e-mails the plaintiff made promoting the defendant in reliance on the defendant’s assurance that it would execute the STA.
The plaintiff’s complaint, dated June 6, 2001, alleges six causes of action sounding in, among other claims, breach of contract. The defendant is presently moving for an order dismissing the complaint. It asserts that the first and third causes of action are premature under the plain terms of the contract; that the allegations asserted in the second and fourth causes of action are legally insufficient; and that the fifth and sixth causes of action fail to state cognizable claims. The plaintiff opposes this motion.
The first claim for breach of contract alleges that the defendant breached the agreement by failing to procure one million users and to refund to the plaintiff a portion of the $2,000,000 equal to the percentage by which the number of users procured by the defendant was less than one million. The contract provides that if the registration did not exceed one million users by the date which was 180 days after the end of the first *4 anniversary of the launch date, the defendant would refund a portion of the $2,000,000 it was paid by the plaintiff. The defendant claims that insofar as the plaintiff has admitted that the subject date is November 4, 2001, the plaintiffs first breach of contract claim is premature. The plaintiff responds that the parties here did not intend that, the service would cease operating. A reasonable interpretation of the contract is that the parties intended that if the service stopped and the defendant became incapable of achieving the parties’ expectations, it would be required within a reasonable amount of time thereafter to refund a ratable portion of the $2,000,000 advanced by the plaintiff. The court finds that, pursuant to the contract’s clear terms, this claim is premature. Accordingly, this claim is dismissed without prejudice to the plaintiff to amend its complaint to include this claim at a later time.
The second claim alleges that even if the defendant’s obligation to refund the pro rata portion of the $2,000,000 is not triggered until November 2001, the defendant has anticipatorily breached the agreement by stating that it will not refund to the plaintiff the entire amount of money that it is due. The defendant argues that the complaint does not allege that the defendant expressed a clear and unequivocal intent to repudiate its obligation under the contract. The plaintiff concedes that although the complaint does not allege that the defendant expressly refused to make a pro rata refund of the $2,000,000, the plaintiff has presently submitted the affirmation of its general counsel who attests that the defendant unequivocally indicated its intent not to do so. Upon a review of the allegations set forth in the complaint as well as a review of the affirmation submitted by the plaintiffs general counsel, the court finds that they do not set forth a viable claim for anticipatory breach and accordingly this claim is dismissed.
The third claim for breach of contract alleges that the defendant retained the full $3,200,000, even though it failed to distribute five million CD’s. Regarding this claim, the contract provides that in exchange for the defendant’s agreement to use commercially reasonable efforts to distribute CD’s containing the service, the plaintiff would pay to it a nonrefundable amount of $3,200,000. The defendant argues that the subject contract clearly states that the payment is nonrefundable. The plaintiff counters that the word nonrefundable cannot be construed as a license to the defendant to provide little or no consideration and to still retain an advance payment. The court finds that a viable claim is asserted here. Under the contract *5 the payment would be nonrefundable only in the event the defendant used commercially reasonable efforts to distribute the five million CD’s which, accepting the averments of the complaint as true, is not the case.
The fourth claim for breach of contract alleges that the defendant failed to mutually determine with the plaintiff the best course of action in response to the cessation of Spinway. Regarding the fourth claim the contract states that if, during the term of the agreement, the service terminates, the parties will mutually determine the best course of action to pursue. The defendant asserts that this claim must fail in that it is simply a repetition of the breaches upon which the other claims are based. Furthermore, the damages demanded in connection with this claim do not bear any causal relation to the alleged breach. The plaintiff responds that it has shown a connection between the alleged breaches of the agreement and the damages it has alleged in the complaint. Upon its review of this claim the court finds that insofar as it is in fact, as the defendant asserts, a repetition of the other claims, it is dismissed.
Finally, the fifth claim for quantum meruit alleges that the plaintiff sent out a mass distribution of e-mails promoting the defendant in reliance upon the defendant’s assurance that the STA would be executed which it was not and, the sixth claim for unjust enrichment alleges that the defendant derived a benefit from the valuable advertising the plaintiff provided, for which it has not been paid. Regarding these claims the defendant asserts that the plaintiff has not demonstrated any expectation of compensation for the e-mails and advertising it claims to have undertaken. On the other hand, the plaintiff claims that in its complaint it set forth the elements of the claims for quantum meruit and unjust enrichment.
In order to make out a claim in quantum meruit, a plaintiff must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services (see, Landcom, Inc. v Galen-Lyons Joint Landfill Commn., 259 AD2d 967; Moors v Hall, 143 AD2d 336). In order to be entitled to recover damages for unjust enrichment, a plaintiff must show that the defendant obtained a benefit that in equity and good conscience he should not have obtained or possessed because it rightfully belongs to another (see, Bugarsky v Marcantonio, 254 AD2d 384). The court finds that the plaintiffs complaint has stated viable claims under each of these legal theories.
*6 Accordingly, accepting as true the factual averments of the complaint and according the plaintiff the benefits of all favorable inferences which may be drawn therefrom (see, TKO Fleet Enters. v Elite Limousine Plus, 286 AD2d 436), the court grants the defendant’s motion only to the extent that the first, second and fourth claims asserted in the complaint are dismissed without prejudice to the plaintiff to amend its complaint to include the first claim at a later time.